UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:05-CR-21 |
| V. ) | District Judge Greer |
| ) | Magistrate Judge Inman |
| RICKY FORD ) | |

REPORT AND RECOMMENDATION

Defendant has filed a Motion to Suppress[1] any evidence seized as a result of a search of his vehicle on February 1, 2005, and any evidence seized from a subsequent search of his home. The motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on April 4, 2005.

At the commencement of the hearing, the government announced that it would not attempt to introduce any evidence seized from defendant's home. As a result of that announcement, the evidentiary hearing was limited to the evidence seized from the defendant's vehicle. A separate order has been entered with respect to any evidence seized from defendant's home.

On February 1, 2005, Investigator William Gregg of the Criminal Investigation Division of the Washington County Sheriff's Department, accompanied by John

---

[1]Doc. 19.

Maden, a reserve Lieutenant with the Sheriff's Department, drove by 255 Hartman Road in Washington County as a result of numerous complaints from neighbors over a one-year period that drug activity was occurring at this location. As Gregg and Maden drove by, they noticed a gold Chevrolet Camaro sitting in the driveway. As a matter of routine, Gregg noted the license tag number on the Camaro, and asked that his dispatcher "run" the tag. Shortly thereafter, Gregg was advised by his dispatcher that the tag was registered to a GMC pickup truck, not the Camaro vehicle upon which the tag was affixed.

Gregg and Maden took no action, and left the area for nearly three hours. As Gregg and Maden were driving on Highway 75 to another location, a gold Camaro passed them going in the opposite direction. Wishing to determine if it was the same gold Camaro they saw earlier, Gregg turned around in an attempt to catch up to the vehicle. After driving a short distance, the officers noticed the Camaro in a grocery store parking lot. Gregg drove some short distance beyond, again turned his car around, and as he approached the Camaro he saw a white male exit the store, get into the vehicle, and drive off. As the driver of the Camaro left the parking lot, he did so in a reckless manner, at least to some extent; the driver spun the wheels and "fish tailed" across the center line of the highway. Gregg activated his blue lights and pulled the Camaro over. Gregg asked the driver for his license, which the driver produced; that license was valid and showed the driver to be Ricky Ford, defendant herein. Gregg

also asked to see the vehicle's registration certificate and proof of insurance, neither of which the driver was able to produce. The driver said that he had just purchased the car and had not yet had an opportunity to register it and, as far as insurance was concerned, he stated that he had proof of insurance coverage at his home.[2]

A precautionary and, as it developed, a rather careless, pat-down search of defendant's person revealed nothing.

Gregg commenced writing citations for reckless driving, improper registration, and no proof of insurance. As he completed those citations, but before presenting them to defendant for his signature, Gregg told defendant that he was "doing an interdiction for drugs and weapons" and he asked defendant if he had any guns or drugs in the car. Defendant stated that he did not.

Everything in the preceding paragraphs was undisputed; the testimonies of Officers Gregg and Maden and the defendant were quite consistent up to this point. However, their versions of what happened next differ markedly. After defendant stated that he had no drugs or weapons in the car, Gregg testified that he asked defendant for permission to search his vehicle and that defendant responded that Gregg could go ahead and search "because there ain't nothing in there."

Maden completely corroborated Gregg's testimony.

Defendant, on the other hand, although he acknowledged that he was told by

---

[2]Defendant testified that he was buying the car from "some boys." He either could not, or would not, identify the person from whom he was buying the car.

Gregg that he (Gregg) was looking for guns and drugs, and that he responded in the negative when asked by Gregg if there were any drugs or guns in the car, flatly testified that Gregg never asked permission to search the car but rather commenced the search upon defendant's assertion that there were no drugs or guns in the car.

At this juncture, it is strictly an issue of credibility; who is believed, and who is not?

The Court believes the testimony of Officers Gregg and Maden that Gregg asked defendant for permission to search the vehicle, and defendant gave that permission.

Defendant argues that even if he did consent, his consent was not freely given because he was not free to leave at the time Gregg asked for permission to search the vehicle. Gregg unequivocally testified that had defendant refused permission to search, he was free to leave. The only restriction on defendant's movements was that he could not leave until he signed the misdemeanor citations given him for reckless driving, improper registration and failure to demonstrate proof of insurance. That limited restriction does not in any way approach a custodial arrest. Defendant was free to leave as soon as he attended to the minor ministerial task of acknowledging receipt of the citations by affixing his signature thereto.

Defendant also argues that he should have been "Mirandized," i.e., advised of his rights to remain silent. First, the only thing defendant said that could be remotely construed as incriminating was his denial that he had any guns or weapons on his

4

person or in the car, both of which representations turned out to be utterly false, as discussed hereafter. Second, defendant was not under arrest, nor was he in custody in any meaningful sense of that term. Third, there is no constitutional requirement that a suspect be advised that he has the right to refuse to consent to a search. *See, United States v. Drayton*, 536 U.S. 194 (2002).

The drugs found within defendant's vehicle were in "sealed containers," or semi-sealed containers, such as a stainless steel container, plastic trays and a bag. Gregg opened each of these containers and found illegal drugs therein. This is a non-issue; when a defendant gives a general consent to search his car for drugs or other contraband, that consent includes a consent to search containers within the car which might contain drugs. *See, Florida v. Jimeno*, 500 U.S. 248 (1991).

After the drugs were found in defendant's car, a second search of defendant's person was performed. That search resulted in the seizure of a .22 caliber derringer, drugs, and drug paraphernalia.

In conclusion, the primary and essential issue in the suppression hearing was whether defendant was asked by Officer Gregg to consent to the search of defendant's vehicle, and whether defendant gave that consent. It is respectfully reported that the answer to both questions is the affirmative.

It is respectfully recommended that defendant's Motion to Suppress be DENIED as far as the search of the vehicle and defendant's person is concerned.

Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985). The objecting party shall procure and file simultaneously with the objections a transcript of any testimony before the Magistrate Judge. If a transcript is not filed simultaneously with the objections, the party filing the objections shall either (1) file a declaration that the transcript was ordered before the objections were filed and the date on which the party expects the transcript to be filed, or (2) affirmatively state that a transcript of the testimony presented to the Magistrate Judge is not needed for resolution of the objections.] If a party files objections to this report and recommendation, the attorney for that party shall provide a copy of such objections to the opposing counsel on the same day the objections are filed, either by hand-delivery or facsimile transmission. The opposing counsel shall file his/her response to the objections within five business days of the date the objections are filed.

                Respectfully submitted,

                s/ Dennis H. Inman
                United States Magistrate Judge