UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:05-CR-21 |
| | ) | |
| RICKY FORD | ) | |

**<u>O R D E R</u>**

This criminal matter is before the Court to consider the Report and Recommendation of the United States Magistrate Judge filed after an evidentiary hearing on April 4, 2005. The Magistrate Judge recommends that the defendant' motion to suppress the evidence seized from his vehicle should be denied. The defendant has filed an objection to this report and recommendation.

The Court will adopt the following summary of facts set out in the Magistrate Judge's Report and Recommendation. Everything in the following summary of facts was essentially undisputed because the testimony of Officers Gregg and Maden and the defendant were quite consistent up to that point.

**SUMMARY OF FACTS**

On February 1, 2005, Investigator William Gregg of the Criminal Investigation Division of the Washington County Sheriff's Department, accompanied by John Maden, a reserve Lieutenant with the Sheriff's Department, drove by 255 Hartman Road in Washington County as a result of numerous complaints from neighbors over a one-year period that drug activity was occurring at this location. As Gregg and Maden drove by, they noticed a gold Chevrolet Camaro sitting in the driveway. As a matter of routine, Gregg noted the license tag number on the Camaro, and asked that his dispatcher " run" the tag. Gregg was advised by his dispatcher that the tag was registered to a GMC pickup truck, not the Camaro vehicle upon which the tag was affixed.

Gregg and Maden took no action, and left the area for nearly three hours. As Gregg and Maden were driving on Highway 75 to another location, a gold Camaro passed them going in the opposite direction. In order to determine if it was the same gold Camaro they saw earlier, Gregg turned around in an attempt to catch up to the vehicle. After driving a short distance, the officers noticed the Camaro in a grocery store parking lot. Gregg drove some short distance beyond, again turned his car around, and as he approached the Camaro he saw a white male

exit the store, get into the vehicle, and drive off.

As the driver of the Camaro left the parking lot, he spun the wheels and " fish tailed" across the center line of the highway. Gregg activated his blue lights and pulled the Camaro over. Gregg asked the driver for his license, which the driver produced; that license was valid and showed the driver to be Ricky Ford.

Gregg also asked to see the vehicle's registration certificate and proof of insurance, neither of which the driver was able to produce. The driver said that he had just purchased the car and had not yet had an opportunity to register it and, as far as insurance was concerned, he stated that he had proof of insurance coverage at his home. A precautionary and, as it developed, a rather careless, pat-down search of defendant's person revealed nothing.

Gregg commenced writing citations for reckless driving, improper registration, and no proof of insurance. As he completed those citations, but before presenting them to defendant for his signature, Gregg told defendant that he was "doing an interdiction for drugs and weapons" and he asked defendant if he had any guns or drugs in the car. Defendant stated that he did not.

3

**DISPUTED FACTS**

The witnesses' versions of what happened next differ markedly. After defendant stated that he had no drugs or weapons in the car, Gregg testified that he asked defendant for permission to search his vehicle and that defendant responded that Gregg could go ahead and search "because there ain't nothing in there." Maden completely corroborated Gregg's testimony.

Defendant, on the other hand, although he acknowledged that he was told by Gregg that he (Gregg) was looking for guns and drugs, flatly denied that Gregg ever asked permission to search the car but rather commenced the search after the defendant asserted that there were no drugs or guns in the car. The defendant also testified that he was buying the car and that "some boys" dropped the car off earlier that day. He either could not, or would not, identify the person who gave him the car.

**ANALYSIS AND CONCLUSIONS OF LAW**

During the search of the vehicle, Officer Gregg found a white powdery rock-type substance in a stainless steel container with a twist-off lid. This substance field-tested positive for cocaine. After the drugs were found in defendant's car, a second search of defendant's person was performed. That

search resulted in the seizure of a .22 caliber derringer, drugs, and drug paraphernalia.

As the Magistrate noted, this case involves strictly an issue of credibility, and that he believed the testimony of Officers Gregg and Maden that Gregg asked defendant for permission to search the vehicle, and that the defendant gave that permission. Even though this Court is conducting a *de novo* review of this suppression issue, this Court must give considerable deference to the Magistrate Judge's credibility determinations because he made his credibility findings after hearing the testimony of the witnesses in open court.
*United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005).

The defendant also argues that the fact that Gregg had written consent to search forms available is also proof that he (Ford) did not consent to the search. The defendant contends that even if he did consent, his consent was not freely given because he was not free to leave at the time Gregg asked for permission to search the vehicle.

Gregg unequivocally testified that had defendant refused permission to search, he was free to leave. The only restriction on defendant's movements was that he could not leave until he signed the misdemeanor citations given him

5

for reckless driving, improper registration and failure to demonstrate proof of insurance. That limited restriction does not in any way approach a custodial arrest.

Although the defendant contends that his detention was unreasonable, to determine whether a detention is reasonable, it is clearly settled that this court must consider "whether the officer's action was justified at its inception, and whether it is reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). The Sixth Circuit has held that an officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation, because this activity "would be well within the bounds of the initial stop." *United States v. Bradshaw*, 102 F.3d 204, 212 (6th Cir. 1996). If the traffic stop of defendant's vehicle was justified, it follows that if the detention was of a reasonable length and any consent to search voluntarily given during this time would justify a search of the vehicle. *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999)

**CONCLUSION**

The Court FINDS that the traffic stop of defendant's vehicle was justified, that the defendant's subsequent detention was reasonable and that the defendant voluntarily consented to the search of his vehicle.

Accordingly, after careful consideration of the Report and Recommendation of the United States Magistrate Judge, [Doc. 30], it is hereby **ORDERED** that this Report and Recommendation is **ADOPTED** and **APPROVED**, and that the defendant's motion to suppress the evidence seized from his vehicle is **DENIED.** [Doc. 19]

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE